Next, we have argument in Wu v. Sunrider Corporation. May it please the Court, Paul Hoffman for the Plaintiff and Appellant Wu. I'd like to focus my argument on the accrual issues. And to start out with the error that the district court made with respect to accrual, basically what the trial court said was that she should have known the moment that she signed the contract to join this scheme that she was joining a scheme that violated the endless chain law. That's basically what the court found. That means that everybody that ever joins this organization should know at the moment they join it that they're joining an illegal organization, one that violates Penal Code 327. And that just can't be the law, and it isn't the law. For accrual, the person, the elements of an endless chain claim are that someone is a participant, which he clearly was, and you have to be a participant in an endless chain. But you have to know that it's an endless chain. And the way you know that is not simply because you could be paid for recruitment. I'm sure that my opponent's not going to say that because their advertisement says that you can get money because you recruit people. That's not a pyramid. The pyramid requires more facts. It requires you to know that the scheme is not selling product to the outside world. And the FTC has guidelines where you have to show that you're selling outside the chain 70% or 80%. But what is your view on when she knew that? Well, she said, and she testified without contradiction, that she understood that this was a pyramid in January of 2017. She talked to somebody who gave her information that that would be true. She contacted counsel. Counsel had additional information that he brought to the bear in terms of filing the complaint and filed the complaint in May of 2017. So she was a participant. And the reason she was a participant, by the way, is she made a payment in October 2014. She was listed as an active participant in their records up until 2017. She wasn't terminated as a participant until after the filing of the case. So she learned, and I think that the question for accrual, just on basic accrual doctrine, is that you have to know both of the elements in this case. And there's no evidence in the record that she knew or should have known before January 2017 that she was a participant in a pyramid. If they could show that there was some reason that she would know that before that, then it would run from some earlier time. But they didn't, and they can't. And so the judge was wrong in her legal analysis about that accrual. Now, we would also make the argument a part, and that's just basic accrual doctrine, not any special accrual doctrine. We would also contend that the doctrines of continuing violations and continuing accrual apply. And they're similar but different doctrines. In continuing violations, the judge rejected that. But I think wrongfully in the sense that a pyramid scheme is exactly the kind of thing that continuing violations doctrine applied to. It's because you would make payments over a period of time. How would anybody know that they're in a pyramid? They don't have access to the internal records. They may think, as our client did, that she just wasn't very good at getting people to join. She didn't know that it wasn't her problem. And that might be true of everybody. In fact, what we believe the evidence will show is that, and they don't actually have records on this in violation of FTC guidelines and accounting rules, that it's unclear whether there are very many sales outside this chain at all. But how would anybody know that? You can't know that. And so that's a perfect kind of thing where you wouldn't know at almost any particular point in time. In fact, it's unclear whether you'd ever know unless there was a newspaper article, unless somebody, an insider, gave the information that there's a pyramid. Unless somehow it comes to light, no individual is going to know that. And she didn't know that. For continuing accrual, it's a little bit different in that there the argument would be that each payment in this kind of chain would be a separate actionable act. And so from that standpoint, there's at least the payment in October 2014, which is within what everybody concedes would be the statute for the ECO. And the fact that she's listed as an active participant. I mean, there are more issues about whether she was owed money from people that were her down lines, all that kind of thing. But all the court would really need to do is reverse with respect to the accrual doctrines. And discovery as well. I mean, I think the delayed discovery kind of overlaps with basic accrual principles here because you need to know the other element before you have a requirement to file a case. She's indicated when she found out either that's basic accrual or that's delayed discovery. And so we would ask the court to overturn the summary judgment on the statute of limitations and find that her case was timely filed. There will be other issues that the court will have to deal with that are still pending below, but we would ask that the court do that. If there are any questions, I'd reserve the rest of my time. We don't have California law clearly on this point. I think you do. I mean, we have related law. Well, I think RCA goes through the continuing violations and continuing accrual doctrine and basic accrual principles. Well, that's true. I mean, if we were to adopt that. But I want to go back just to the basics. What does she need to prove for her ECL claim? That she's a participant. And that's very broad. She didn't even have to have a contract. She made a payment. She was clearly in their system. She had the ability to get money from down lines and had to pay. Well, what else does she have to show? Because she was a participant on day one. That she was a participant in an endless chain. So she has to prove that it's an endless chain. And what we would have to prove at trial is that this is a scheme that's based on getting people to come in and buy product and that the product is not sold outside to the world. That's basically what we have to prove. And we believe we can prove. That's what she'd have to prove. I think she doesn't know that until not in 2007, not in 2009, and not until later. Right. Why would she know that? Why would she know that the scheme is not based on selling to people? She tried to sell to people. Right? I mean, and if you look at all the materials, the materials say the way you make money is you go out and you sell to people. You also make money if you get people in and you get some of the things that they get from selling to people. Now, in fact, if in the scheme they did, in fact, sell to 80% outside the chain, which is not, I mean, they could do that. Amway does that. So it's not like a multilevel marketing scheme can't be legal. And so how would you know? You'd have to know that the way the scheme is constructed doesn't really sell to outside people, that it really is dependent on a pyramid, that they're making money by bringing people in and paying people to recruit other people to buy their product inside the chain. That's a typical pyramid. But how would she know that? She's one person that deals with one person on her upline, this Julie Tate person or tat. She has no idea. They're not giving her information about who they sell to. It's not public. So it would be really difficult to find out, which is exactly why the accrual doctrines and all the doctrines that are described in RIA and other California cases should be applied with particular leniency to someone in this plaintiff's situation, because the legislature was intended to go after and end these kinds of schemes, but they're inherently deceptive and they're inherently secret, and anybody joining them can't know about it unless somebody else blows the whistle, which is what she found out about, and she brought her claim within a very short period of time after she discovered it. And I would like to reserve the rest of my time. You may. Good morning, Your Honors. May it please the Court, Jeffrey Jacobson on behalf of Sunrider and the Chens. Your Honor, the district court did not find that the claim accrued the moment Ms. Wu signed the contract. All Ms. Wu needed to do to make money here was resell the very small quantity of product she bought. If she had done that in 2007, she would have earned money. She didn't. She tried to sell the product. I would say her attempts were kind of half-hearted, but she made some attempts in 2007. It didn't work. She was done. Had no further obligations. 2009, she voluntarily makes another purchase. Tries again to sell the products. Doesn't. What the district court found was no later than 2009 when she banged her head against this wall the second time, she knew what she needed to know to bring a claim. How did she know wrongdoing? How did she know wrongdoing? Well, first of all, Your Honor, there was no wrongdoing. She bought products and she had the opportunity to resell the product. So there's no wrongdoing here for her to have known about. She's contending that she couldn't make money. Basically, they're saying that this is a scheme and there's no way to make money, except all she needed to do was resell the products that she was attempting to resell. She tried. She failed. But how would that put her on notice that she has a claim, for example, under the ECL? Oh, Your Honor. I mean, basically, she's not a very good salesperson, apparently. Well, so, Judge McKeown, what happened was in January 2017, she testified that she talked to a friend of hers who engaged my opponent to sue another company, and she said that her friend said to her, you might want to get in on this act, too, and talk to my lawyer. But there's nothing in the complaint and nothing in discovery suggests that anything emerged, that she suddenly, a lightning bolt hit her and she learned that Sunrider, there was something wrong with Sunrider, per se. There's no fact alleged in the complaint that she ever discovered anything that Sunrider concealed. The system was pursuant to a contract that we gave her in 2007. Nothing changed. So there was no ---- Well, but it's kind of this conundrum because your claim is your client isn't doing anything wrong. So how can she, in a system where your client is not doing anything wrong, uncover or divine the fact that she has a claim? Well, you're certainly right that I contend that my client did nothing wrong. But everything she needed to know about her inability to make money, whether it was her own fault or something else in the stars, everything she needed to know she knew, as the district court said, either in 2007 or in 2009. So she could have ---- and there's no dispute here. How did she know this was an illegal endless chain in 2007? Well, she doesn't know that it's an illegal endless chain now. It isn't one. But the point is that she ---- That's what she alleges. Well, sure. But there's no dispute here, Your Honor, that she could have brought this claim in 2007 or 2009. What Your Honor is saying is, well, there was some bit of knowledge that she didn't have in 2007 or 2009. But the only knowledge that she's now asserting is I talked to a lawyer and the lawyer said, you've got a claim. That's never been held to satisfy the fraudulent concealment statute. So, again, since there's no dispute that she could have brought this claim in 2007 after she failed or 2009 after she failed, and because fraudulent concealment ---- So let's say it's 2007. What would be her claim? Same endless chain law claim. I mean, it's she ---- all they're alleging now is that there's something inherently wrong with the Sunrider system that she became a part of in 2007. So her claim, it would have been exactly the same complaint in 2007 as it was in 2017. Because I didn't know it was an endless claim. I mean, it was an endless chain in 2007. But, see, Your Honor, I mean, what is an endless chain? An endless chain is a multilevel marketing system where you effectively can't sell to people outside of the ---- as my opponent said, outside of the system. But so, okay, so she tried to sell the product and she was unsuccessful. What else did she need to know for her own purpose? I mean, I agree with you. I don't think she could have sued in 2007 because I don't think there's anything wrong with Sunrider. But what she's contending is there is no way to make money in Sunrider unless you bring in other people and the other people buy products and then they bring in other people and then the other people buy the products. But all of that knowledge was known to her in 2007 when she tried to sell the product and didn't succeed. Now, by the way, the reason why we have a statute of limitations is so that I can test her knowledge about what she actually tried to do in 2007. But when I deposed Ms. Wu, she had only the vaguest recollection of what she actually tried to do in 2007 and 2009. So, you know, that's my defense here is I'm supposed to be able to argue that she had every opportunity to make money here, but she failed. And she's contending it's our fault. We're contending that she just didn't do what all of the materials say, which is you have to put effort into this business. But her memory has failed after 10 years, not surprisingly. She can't tell me what she did in 2007 or 2009. Well, I mean, she might lose on the merits, but I'm still having a little trouble on the statute of limitations. Well, but again. I mean, it's kind of an odd thing because usually the harm to the plaintiff, you know, is directly traced to the defendant in a standard case. This is a little bit different because she, the fact that she's not successful doesn't necessarily mean that your client is doing anything wrong or that she has a claim, correct? Well, Your Honor, you're absolutely right. But so let's say that Ms. Wu had done this in 1964 and only talked to a lawyer in January of 2017 and the lawyer sued in May of 2017. But we're talking about attempts she made in 1964. There's really no difference here. I mean, there's a three-year statute of limitations under the Endless Chain Law and she sued here, as the district court said, eight years after, at the latest, eight years, or the earliest actually, after she had the knowledge that she needed to at least put her on inquiry notice that maybe there's something wrong. Because she tried in 2007, she tried in 2009. Now, I need to address this 2014 purchase. First of all, did she make a payment in October 2014? Yes. But that's only because she bought products in May of 2014 and then lied to her credit card company about the fact that she didn't actually make the payment, I mean, make the purchase. So let's just kind of back up and talk about the 2014 purchase for a second. She's been out of this for five years. We didn't reach out to her. We didn't market to her. In April of 2014, after a five-year hiatus, she comes to us and says, I want to become an IBO again. And that changed her mind. We sent her a starter pack. She disputed that credit card charge. She returned it. So she was not an IBO after she returned that starter pack, which was the necessary prerequisite for her to be one. In May of 2014, she makes a retail purchase, buys a few hundred dollars' worth of Sunrider products. She picks it up herself at the will call window. And then she disputes that charge, saying it was fraudulent, it wasn't me. We produced to the credit card company her will call signature. She says at deposition, yeah, that was me. I picked it up. I don't remember why I disputed the charge. And then basically she disputed the charge again to her credit card company. The credit card company says to Sunrider, there's nothing more we can do. If you want this money from her, you have to sue her. We reached out to her and said, hey, you picked up $500 worth of products, and if you don't pay us, we're going to bring legal actions against you. And then she paid us. But she was not an IBO in 2014 because she returned the starter pack. So the district court basically said, look, this 2014 purchase does not restart anything because she came back and did the same thing she did in 2007 and 2009. And even if it did matter, the district court said, the purchase was in May of 2014, not October. And you can't buy yourself an extra five months under the statute of limitations by committing credit card fraud because it doesn't matter what happens in those five months that she delayed paying for it. Now, all of the federal claims have been dismissed, were dismissed below. Correct, Your Honor. It was RICO and securities fraud. Okay. So you had both federal question and CAFA jurisdiction. Yes. Can you remand if there's CAFA jurisdiction? Sure. I mean, in other words, this case could have been brought without the federal claims to begin with. And so originally the claim that had a RICO claim, we removed it. But there are cases like this brought all the time that don't have any federal claims at all. So you're saying can you remand? I'm sorry. No, could you remand back to the state court once you've removed? No, what happened here was we removed and then there was a remand fight and then they pleaded securities fraud claims. There was exclusive jurisdiction in the district court anyway, and the district court really did not think very much of their remand motion, particularly after they pleaded federal securities claims that could only be brought in federal court. Well, is CAFA a bar to remand? CAFA is not a bar to remand if for some reason you've waived the right to be in federal court, but we didn't. In other words, we had the ability to remove this case, as the district court found. On the federal question? Under CAFA. Okay. So in other words, there were two different complaints here, Judge Parker. There was one complaint that was filed in state court. We removed it. While the case was in federal court, Ms. Wu amended the complaint and pleaded federal securities fraud claims that have exclusive jurisdiction in federal court. We filed a supplemental notice of removal. And brought that up. And it was so basic when the district court decided against remand, she had both of our notices of removal before her. Okay. What, in your view, should be the position of this court on this matter? So, Your Honor, my opponent brought up the ARIA case. I think that the most difficult problem this court faces with this case is the idea of continuous accrual. And the idea of this May 2014 purchase being meaningful. The ARIA case dealt with a recurring contract where the periodic obligations were unavoidable. And further, the periodic obligations in ARIA were individually deceptive. They were fraudulent. In the ARIA case, the copier company was charging for copies that the customer never made. And so what the Supreme Court held in ARIA was that you can sue for those deceptive periodic payments you made during the limitations period. But no court that's interpreted ARIA has ever applied it to anything other than an unavoidable recurring obligation. There was no unavoidable obligation here. Ms. Wu came back voluntarily after a five-year hiatus and said, let me try again. And similarly, there's nothing wrong with the purchase. It was a retail purchase and we delivered exactly what she ordered. Let's assume hypothetically that your client is running an illegal pyramid operation. Must I? I won't belabor it, but I just have one question for you. When does the statute start to run? Your Honor, I think it's fair to say that the statutes, and this is what the district court held, the statute starts to run from when she possesses the knowledge sufficient to bring a claim. I mean, the accrual rules in California couldn't be clearer. It's when all of the elements come together. So what my opponent is saying was, well, she learned something, but they're never clear about what exactly she learned other than, hey, talk to my lawyer who likes to sue multilevel marketers. So what the district court held was she tried to sell the products in 2007 and she didn't succeed. She tried to sell the products in 2009 and she didn't succeed. And those two attempts at least put her on inquiry notice. Of what? Of what? Of maybe there's something. Maybe it's not you. Maybe it's us. Why? She went to the wrong people. She was an inexperienced salesperson. Because if Your Honor, if that were a middle of the economic turndown. Because if it were enough for, it goes back to my 1964 problem. That if somebody participated, I mean, Sunrider has gone back to 1982 when the Gens purchased it. So if somebody who participated in this in 1983 could bring a claim tomorrow because they talked to my colleagues, then what purpose does the statute of limitations serve? Because they would never be able to reconstruct what they did in 1982 to try or fail to resell these products. Is there anything in the documentation that puts her on notice? Well, that's their point is that they're saying that there's something inherently wrong with the system. But everything, I mean, there is no fraud claim in this case because they couldn't plead that there was anything wrong with the voluminous documentation we gave her about how to succeed in a Sunrider business. So I don't know what it is that they're saying that they suddenly learned. There is no finding by the FTC or by the Attorney General. Here's kind of the problem, and maybe you can just get me out of this hole, and that is that under your theory just anyone who's unsuccessful is on notice at that point that they might have a claim. But I don't think your client wants everybody who isn't successful to be suing them. So how do you actually, what do you need to know to bring this claim? I've got a very easy answer to that question. That's great. We have thousands and thousands of participants who are successful. I mean, the point is if we were a pyramid scheme where everybody who paid us money failed, we would have the courthouse would be full. That's not an easy answer to hear. In this case. She wasn't successful. Now, that, so you have a lot of people who are successful. Maybe she doesn't know any of them, and if she did, she'd go talk to them about how do you get successful. That's the point. Why is there not somebody who has done business with us later than in 2009 here suing us? Well, that's, see, that's the odd thing about the case is I'm just not sure what she needs to know in order to sue. Well, the problem is neither are they. Well, nobody is here. I'm not satisfied with their answer either. You aren't suggesting this is a question that there's no answer to. I'm suggesting that I think the district court got it exactly right, Judge Parker, which is that when you try twice to resell products and you are unsuccessful both times, that's the moment to ask yourself is there something wrong here? Is it maybe them and not me? Because otherwise if we are going to allow claims like this to just kind of sit around for, in this case, a decade or 1964 or 1929, we would never be able to defend a claim like that that dates back that far. I know my time has expired. But thank you. Thank you, Your Honor. There's an easy way they could defend. Easy. They just show records that show that their sales go to people outside the chain more than 70%. Easy. That's what Amway did. They could do that. They can't do that. What did she find in January 2017? It wasn't that she just talked to a lawyer that actually knows things about this perhaps. There's stuff online. In 2016, there was an insider that said, hey, they're running a pyramid scheme. That was there that she could find in January 2017 when she went online after she talked to this person. So that's what she needs to know. Loss is not inquiry notice. What she found in the online thing is that 99% of the people lose. That's what's claimed. Now, they may dispute that. That's what the merits are for. But she had notice about the fact that it was a pyramid scheme, and the elements are participation. She participated in October 2014. It doesn't require a contract. It doesn't require her to be an IBO. She's listed in Exhibit S as an active participant up until the time they terminated her after this lawsuit. That's ER 8788. So in their own records, she's listed as an active participant. So at least there's a material dispute of fact. If we didn't have the 2014 incident, when, under your theory, would the statute have started? I think it's still under my theory it would have been January 2017 when she had inquiry notice that this was a pyramid, or if they could show that she should have had inquiry notice before that. Let's say her initial relationship with this company was 1985. And then instead of 2006, 2007. And then she eventually came to your attention, and you signed her up. And you explained to her that what she did 20 years ago was an illegal pyramid scheme. Would she be timely, suing in 2017? I think it would probably depend on the facts about whether she was on inquiry notice at some point from 1985 on. Let's say she wasn't. I think if she wasn't on inquiry notice, then I don't think it accrues until you know both of the elements of the claim. So she could sue on the 85 claim when she sued you in 2017? I think if there's no inquiry notice, in other words, a pyramid scheme that holds all that information inside and it doesn't come out in any way, no insider blows the whistle, there's no FTC investigation. What about her situation where she tries it, she tries it again, it's not working? Isn't that some kind of basis for her to inquire? I don't think it's inquiry notice about the element that it's a pyramid. There's no logical connection between those two incidents. And the fact that she tried again in 2014, maybe she's foolish in trying to do that. Perhaps. Maybe she's not good at this. Or maybe it is in fact the fact that the scheme is set up in such a way that the money is made by having people sell products to other people that they bring in and not to the outside world. And that's the characteristic of a pyramid that no one could know unless they get it somehow. And I think the way these things most of the time happen is that there's an investigation by a state or a federal entity like FTC did with Amway and Herbalife and other cases like that. And they find those facts because they get into the records. In discovery on the merits, we're able to get into the records. We have some information already. They don't have accounting for how much they sell outside the chain, which is a very good indication that they're running a pyramid scheme. Otherwise, they'd have that information that they actually do sell to the outside world rather than internally to this chain. And so we're pretty confident that we'll be okay on the merits. And I think that the judge just got it wrong on accrual. She did find that, well, you should have known that because you weren't successful, it was a pyramid scheme. There's just no logical connection to that. Thank you, Yuri. Thank you. Very interesting case. Wu v. Sunrider is submitted. Thank you both for the briefing and the argument.
judges: Parker, Farris, McKeown